IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 2 3 2023

CLERK, U.S. DISTRICT COURT
By_____ Deputy

ROLAND KALVIN O'NEAL,
TDCJ-CID No. 01706881,

      Plaintiff,

v.

ANDRES DIAZ, *et al.*,

      Defendants

2:20-CV-059-Z-BR

## MEMORANDUM OPINION AND ORDER
## DISMISSING CIVIL RIGHTS COMPLAINT

This matter comes before the Court on Plaintiff's civil rights claims. Plaintiff filed suit *pro se* while a prisoner incarcerated in the Texas Department of Criminal Justice ("TDCJ"), Correctional Institutions Division. *See* ECF No. 3. Plaintiff was granted permission to proceed *in forma pauperis*. *See* ECF No. 8. On December 6, 2021, the Court ordered Plaintiff to complete a Briefing Order Questionnaire. ECF No. 10. On December 30, 2021, Plaintiff's Briefing Order Questionnaire Response ("Response") was received. ECF No. 11. For the reasons discussed herein, Plaintiff's Amended Complaint is **DISMISSED**.

### FACTUAL BACKGROUND

Plaintiff claims he was subjected to excessive force and deliberate indifference to his medical needs following that use of force. ECF No. 3 at 4; ECF No. 11 at 1–3. Plaintiff alleges on March 5, 2018, Plaintiff "jacked the food tray slot" (ECF No. 11 at 1), and "ran the [TDCJ extraction team] and injured three (3) officers with a shank" (ECF No. 3 at 4) while TDCJ officers attempted to use corrective action. Plaintiff asserts in his Complaint that "*in the process*" of being

leg shackled, while his arms were restrained, some of the Defendants jabbed him in the back multiple times with some object or part of their bodies. ECF No. 3 at 4. Plaintiff does not indicate, nor does he ever claim, that this happened while he was totally compliant and no longer struggling with officers. *See id.*; *see also* ECF No. 11 at 1–3.

LEGAL STANDARD

When a prisoner confined in any jail, prison, or other correctional facility brings an action with respect to prison conditions under any federal law, the Court may evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears*[2] hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).[3]

ANALYSIS

Claims of excessive force to subdue convicted prisoner are analyzed under an Eighth Amendment standard. *Whitley v. Albers*, 475 U.S. 312 (1986). It is clearly established law that prison staff cannot cause the unnecessary and wanton infliction of pain. *Id.* at 320. The "core

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993).

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] *Green vs. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire."). Dismissals may also be based on adequately identified or authenticated records. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995).

judicial inquiry" into a plaintiff's claim of excessive force under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Martin v. Seal*, 510 F. App'x 309, 312 (5th Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The inquiry has two components: (1) an objective one that focuses on whether the alleged wrongdoing was nontrivial and harmful enough to violate the constitution and (2) a subjective one that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8. The courts look to five nonexclusive factors to make this determination:

1. the extent of the injury suffered;
2. the need for the application of force;
3. the relationship between this need and the amount of force used;
4. the threat reasonably perceived by the responsible officials; and
5. any efforts made to temper the severity of a forceful response.

*Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998) (citing *Hudson*, 503 U.S. at 7). The Court can consider these factors in any order. *Id.* "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.' " *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Plaintiff's Complaint and Response entirely acknowledge the need for the application of force. ECF Nos. 3, 11. Plaintiff clearly iterates that he wrongfully took control of the food slot in his prison cell and he caused physical injury to three guards when he "shanked" them. *See id.* Plaintiff states that Defendants should have stopped using force when he was restrained, but his recitation of the facts where force was used was *during* the application of leg shackles (restraint necessary for his violent behavior) and it is *not* alleged by Plaintiff that he had ceased all struggles and a time had passed for his behavior to be considered a threat. *See id.* Thus, there was an ongoing need to subdue the prisoner while he was being leg shackled. Plaintiff's behavior that necessitated

3

the use of force was exceptionally violent, and his description in the Complaint also indicates that his "homeboy" (another inmate) was also acting violently with the guards at the time of the incident. Plaintiff's own description of his behavior could have necessitated the *lethal* use of force against him, as Plaintiff used a deadly weapon to shank multiple TDCJ guards at the time of the incident. *See* ECF No. 3 at 4. As such, the "three jabs to the back"[4] and temporary pinning of his head and/or neck, while applying leg shackles, is not excessive in response to Plaintiff's admitted behavior. *See Deville*, 567 F.3d at 167.

Additionally, a review of the *Hudson* factors reveals that Plaintiff's claim of excessive force also discounts the threat reasonably perceived by the officers at the time the force was used. *See Baldwin*, 137 F.3d at 839. Plaintiff was still in the process of being shackled and admittedly did not willingly relinquish the weapon he used against TDCJ guards. Further, at the time of restraint, the TDCJ guards had no way of knowing if Plaintiff had additional weapons or if his "homeboy" had other weapons, and he needed to be subdued immediately and completely. *See id.* Thus, the application of force to subdue him was not excessive in light of the facts, accepting all facts Plaintiff describes as true. Thus, Plaintiff's claim of excessive force is **DISMISSED**.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Such indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to

---

[4] Although Plaintiff uses different language in his Complaint and his Response to describe the three strikes to his back sustained during the incident, his chronology of the events makes evident the physical force used by the Defendants occurred *during* the process of restraining him. Additionally, the language used by Plaintiff in the Complaint and Response does not indicate that Plaintiff sustained knife wounds or that the Defendants used weapons (knives, tasers, clubs, etc.) against the Plaintiff — even if such were the claims of Plaintiff, the force used was *not* the application of retaliation, but the process of subduing Plaintiff during an exceedingly violent encounter.

4

medical care or intentionally interfering with the treatment once prescribed." *Id.* Medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). A delay in medical care constitutes an Eighth Amendment violation only if there was deliberate indifference, which resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Deliberate indifference "is an extremely high standard to meet." *Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) ("[E]mphasizing … the test of deliberate indifference as a significantly high burden for plaintiffs to overcome."). A prison official acts with deliberate indifference "only if (A) he knows that inmates face a substantial risk of serious bodily harm and (B) he disregards that risk by failing to take reasonable measures to abate it." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal marks omitted); *see also Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994)). Unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Hall v. Thomas*, 190 F.3d 693 (5th Cir. 1999); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir.1999); *Banuelos v. McFarland*, 41 F.3d at 235; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).

A showing of deliberate indifference requires the prisoner to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). The Fifth Circuit has defined a "serious medical need" as "one for which treatment has been recommended or for which the need is so apparent that *even laymen* would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12 (emphasis added).

5

Plaintiff alleged that Defendant Carazales and Defendant Kato did not treat him following the use of force and Defendant Carazales made a statement indicating she just stood by when he was being jabbed in the back by the team of TDCJ officers using force against the Plaintiff. ECF No. 11 at 4. However, Plaintiff Response acknowledges that Defendant Carazales sent Plaintiff to the infirmary for care. *See id.* Plaintiff has not alleged a claim sufficient to support deliberate indifference to his medical needs. Plaintiff's Eighth Amendment claim of deliberate indifference is **DISMISSED**.

CONCLUSION

The Complaint is **DISMISSED**.

**SO ORDERED.**

March **23**, 2023

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

6